## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

UNITED STATES OF AMERICA,       )
                                )
v.                              )    Docket No. 2:15-cr-00168-NT-003
                                )
NEIL WEST, SR.,                 )
                                )
              Defendant.        )

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

Defendant Neil West, Sr., filed a *pro se* motion for compassionate release on October 4, 2021 (ECF No. 280). After reviewing the motion, I issued an Order to Show Cause as to why the motion should not be denied due to Mr. West's failure to identify whether he had exhausted his administrative remedies or to state whether he had been vaccinated against COVID-19 (ECF No. 281). Mr. West subsequently responded to my Order to Show Cause by confirming that he had exhausted his administrative remedies and that he had been vaccinated (ECF No. 282). I then appointed counsel to represent the Defendant (ECF No. 284). Appointed counsel filed the pending amended motion for compassionate release ("**Def.'s Am. Mot.**") (ECF No. 291), which the Government opposes ("**Gov't's Opp'n**") (ECF No. 299). I have also considered the Defendant's reply brief ("**Def.'s Reply**") (ECF No. 301). For the reasons that follow, the Defendant's amended motion for compassionate release (ECF No. 291) is **DENIED**.

## PROCEDURAL BACKGROUND

On August 8, 2012, Mr. West pleaded guilty to a one-count Information charging him with bank robbery. *United States v. West*, 2:12-cr-00128-NT, Minute Entry (ECF No. 25). On June 4, 2013, I sentenced him to a term of forty-one months imprisonment and a three-year term of supervised release. *United States v. West*, 2:12-cr-00128-NT, Judgment (ECF No. 48); Revised Presentence Investigation Report ("**PSR**") ¶ 70. On September 12, 2015, less than four months after Mr. West was released from custody, and while he was serving his term of supervised release, he was taken back into custody on a Complaint charging him with another bank robbery. PSR ¶¶ 1–2, 70. On December 9, 2015, Mr. West was charged by a Superseding Indictment with committing three separate bank robberies, as well as a conspiracy to commit those robberies. Superseding Indictment (ECF No. 61). He also was accused of violating his supervised release as a result of his alleged participation in these robberies. PSR ¶ 70.

On July 28, 2016, after a jury trial, Mr. West was found guilty of committing and conspiring to commit two of these robberies. Jury Verdict (ECF No. 183). On November 30, 2016, I sentenced Mr. West to a term of 175 months for committing these robberies, and I sentenced him to twenty-four months for the supervised release violations. Judgment (ECF No. 218); *United States v. West*, 2:12-cr-00128-NT, Revocation Judgment (ECF No. 71). I ordered that these sentences be served consecutively, for a total term of 199 months. Judgment.

Mr. West is currently incarcerated at USP Coleman II. Def.'s Am. Mot. 2. He requested compassionate release from the Warden on April 26, 2020. Def.'s Resp. Re:

2

[sic] Order to Show Cause Ex. A, at 1 (ECF No. 282-1). That request was denied on May 8. Def.'s Resp. Re: Order to Show Cause Ex. A, at 2. The Government acknowledges that Mr. West has exhausted his administrative remedies. Gov't's Opp'n 3.

## ANALYSIS

Congress enacted the compassionate release statute[1] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that: (1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the § 3553(a) sentencing factors, and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. The parties mostly debate whether Mr. West offers extraordinary and compelling reasons warranting a sentence reduction. But this is only one part of the analysis. I must also consider

---

[1]      Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *United States v. Ruvalcaba*, 26 F.4th 14, 17 (1st Cir. 2022). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See id.*; First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

whether a sentencing modification accords with the § 3553(a) factors, and as a part of that analysis, I must evaluate whether Mr. West would pose a danger to the community were he released. *See* 18 U.S.C. § 3553(a)(2)(C); *see United States v. Millette*, Docket No. 2:16-cr-00004-NT, 2020 WL 7502454, at *6 (D. Me. Dec. 21, 2020) (noting that while the United States Sentencing Commission policy statement pertaining to compassionate release "requires consideration of whether a defendant is a danger to the safety of any other person or to the community, . . . this is already a factor in the § 3553(a) analysis" (internal quotation marks omitted)). And because I find that Mr. West does "remain[ ] a danger to the community, and thus that compassionate release is not warranted, I need not conduct the remainder of the analysis." *United States v. Whindleton*, Docket No. 2:13-cr-00064-NT, 2020 WL 7265844, at *3 (D. Me. Dec. 10, 2020).

Mr. West's criminal history, which dates back fifty years, continued in a virtually unbroken streak (except for periods of incarceration) until his most recent arrest. He has convictions for dozens of crimes in thirty-one separate cases. PSR ¶¶ 5, 41–70. He has been to jail or to prison on approximately twenty-four separate occasions. PSR ¶¶ 42–45, 48–49, 53–57, 63–70. As far as I can tell, Mr. West has been incarcerated, on parole, or on supervised release since at least July 25, 1988—that is, for almost the last thirty-four years. PSR ¶¶ 64–70.

While much of Mr. West's criminal history is petty crime[2]—such as disorderly conduct or driving on a suspended license—he has engaged in multiple dangerous

---

[2]     I do note, however, that it is difficult to know how "petty" these crimes truly were. A conviction for a petty crime does not always mean that the conduct was not serious. And because many of these

4

criminal endeavors, including burglaries and thefts, witness tampering, resisting arrest (twice), driving through a stop sign at a high rate of speed, and multiple bank robberies. PSR ¶¶ 5, 41–70. On five separate occasions, he has escaped from a police cruiser or jail, including once cutting the bars of his cell and another time cutting a hole in the ceiling of his cell. PSR ¶¶ 49, 56–57, 65, 68. He has committed at least five violations of parole or supervised release, and he also appears to have committed other crimes while on parole that did not result in having his parole revoked. PSR ¶¶ 65, 68, 70. He has twice attempted to elude police by driving through traffic at a dangerously high rate of speed. PSR ¶¶ 6, 69. During his current stint in prison, Mr. West has committed two infractions, including one involving the possession of drugs in March 2019, which resulted in the loss of forty-one days of good-time credit. Gov't's Opp'n 2. Given this lengthy, troubling history, I am left with the inescapable conclusions that Mr. West is either entirely unable or entirely unwilling to conform his conduct to the law and that he remains a serious and perpetual danger to the community.

I recognize that Mr. West is now seventy-one years old and that he has a number of serious health conditions. Def.'s Am. Mot. 1, 5–7. But these supposed limitations have not stopped him before. He committed the bank robberies for which he is now incarcerated at the age of sixty-four. And he assisted in an earlier bank robbery at age sixty. He also committed these robberies after suffering a spine

---

convictions are decades old, Probation was unable to get any factual information about much of Mr. West's older criminal history.

fracture and while suffering from type 2 diabetes, hypertension, insomnia, and hypoglycemia, among other conditions. PSR ¶¶ 98–101. Mr. West also committed a prison infraction involving the possession of drugs as recently as three years ago in the institutional environment of a prison. It does not appear that age or health issues have hampered Mr. West's ability to engage in criminal activity before, and I am skeptical that they would now.[3]

---

[3]     Mr. West seeks to compare his case to two others in which I have granted motions for compassionate release, the cases of Newell Mowry and Stephen Kissh. Am. Pet. for Compassionate Release, or Alternatively, Modification of Sentence to Home Confinement ("**Def.'s Am. Mot.**") 3–5, 11 (ECF No. 291). But these cases are not good comparators. Looking strictly at the issue of danger to the community (since that is the ground on which I rely in denying Mr. West's motion), neither Mr. Kissh nor Mr. Mowry raised anywhere close to the level of concern that Mr. West does. With respect to Mr. Kissh, I noted my concern that Mr. Kissh would pose a danger to himself and to the community due to a history of drug and alcohol abuse and his history of dealing drugs. *United States v. Kissh*, Docket No. 2:19-cr-00059-NT, 2021 WL 127128, at *3 (D. Me. Jan. 12, 2021). To mitigate this potential danger, I ordered that various conditions be placed on Mr. Kissh, including requiring that he be released to a sober living residence. *Id.* Moreover, Mr. Kissh's medical condition was so serious that he died just a few days after being released from custody. Suggestion of Death, *United States v. Kissh*, Docket No. 2:19-cr-00059-NT (ECF No. 146).

In Mr. Mowry's case, the Government conceded that he posed little risk of committing a contact offense and that the risk of harm was limited to Mr. Mowry's re-engagement with images of child sexual abuse. *United States v. Mowry*, Docket No. 1:18-cr-00015-NT, 2021 WL 265245, at *4 (D. Me. Jan. 26, 2021). In that case, I determined that there were numerous conditions that could—and would—be placed on Mr. Mowry's release to prevent re-offending, including an internet monitoring program, participation in a sex offender treatment program, and regular polygraph examinations. *Id.* Given Mr. West's extensive history of disobeying any legal restraints placed upon him, I see no possible conditions to mitigate the danger in his case.

Mr. West also makes a somewhat confusing argument that he is less of a danger to the community because, if he had pleaded guilty, he would have gotten a shorter sentence. Reply Mem. in Supp. of Am. Pet. for Compassionate Release ("**Def.'s Reply**") 2 (ECF No. 301). Through some complicated math, Mr. West postulates that if he had pleaded guilty, he would have served more than sixty-five percent of his sentence by this point and that that weighs in favor of his release. Def.'s Am. Mot. 10–11. I must confess that I do not understand the logic. Even if he had served sixty-five percent of his sentence, that does not provide a reason for why he should be released before serving the remainder. But, in any event, Mr. West's underlying premises are flawed. He makes a number of assumptions about what his sentence would have looked like had he pleaded guilty. And his sentencing calculation for his percentage of time served is incomplete—he fails to take into account the twenty-four-month sentence for the supervised release violation, as well as his forty-one days of lost good time credit *See* Def.'s Am. Mot. 10–11 & n.7.

As a backup argument, in the event I declined to commute Mr. West's sentence, the Defendant has requested that he be released to home confinement. Def.'s Am. Mot. 14. In his reply, the Defendant acknowledges that I have no jurisdiction to grant such a request. Def.'s Reply 3; *see United States v. Texeira-Nieves*, 23 F.4th 48, 59 (1st Cir. 2022) ("[S]ection 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home.").[4] Instead he requests that I recommend to the Bureau of Prisons that he be moved to home confinement. Given the above analysis and my persistent concerns that Mr. West remains a danger to the community, I decline the request.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for compassionate release is **DENIED**.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: March 29, 2022

---

[4]      While it may be permissible "to make an end run around the statutory scheme" by "reduc[ing] a sentence to time served, impos[ing] a term of supervised release equal to the unserved portion of the term, and order[ing] home confinement as a condition of supervised release," *see United States v. Texeira-Nieves*, 23 F.4th 48, 59 (1st Cir. 2022), the Defendant has not made such a request. And, in any event, modifying Mr. West's sentence in this manner would not alleviate my concern that he would continue his pattern of criminal activity.